UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN JON WILCOX, #223862,

        Plaintiff,

v.

KEITH J. CHAMBERLIN,

        Defendant.
                                       /

Case No. 2:20-cv-178

Hon. Jane M. Beckering
U.S. District Judge

**REPORT AND RECOMMENDATION**

## I. Introduction

This Report and Recommendation (R&R) addresses Defendant Prison Counselor (PC) Chamberlin's motion for partial summary judgment based on exhaustion. (ECF No. 22.)

Plaintiff in this case – state prisoner Steven Wilcox – filed this lawsuit pursuant to 42 U.S.C. § 1983 on September 21, 2020. (ECF No. 1.) In his verified complaint, Wilcox asserts that PC Chamberlin issued retaliatory misconduct tickets against him on May 15, May 18, and May 19, 2020, while Wilcox was confined at Alger Correction Facility (LMF) in Munising, Michigan. (*Id.*, PageID.4-5.) PC Chamberlin now moves for partial summary judgment. Chamberlin argues that Wilcox did not raise the issue of retaliation during his initial hearing for the May 15, 2020 misconduct ticket, and, therefore, failed to exhaust the retaliation claim based on that ticket. (ECF No. 23, PageID.130.) Wilcox argues that he exhausted all of his

claims through the grievance process and through the misconduct appeal process. (ECF No. 25-1, PageID.302.) Specifically, Wilcox notes that his grievance – <u>LMF-2006-0646-17B</u>,[1] in which he complained of all three incidents of retaliation – was denied on the merits at each step of the grievance process. (*Id.*) He also claims that he raised the issue of retaliation during the hearing on his May 15, 2020 misconduct ticket. (*Id.*)

The undersigned concludes that Chamberlin is not entitled to judgment as a matter of law because Wilcox's grievance was considered on its merits at all three steps of the grievance process. Accordingly, the undersigned respectfully recommends that this Court deny Chamberlin's motion for partial summary judgment.

## II.   Factual Allegations

According to Wilcox, PC Chamberlin retaliated against him for filing grievances several times during May of 2020.

Wilcox says that, on May 12, 2020, he informed Chamberlin that he would be writing a grievance concerning the apparent mishandling of his mail. (ECF No. 1, PageID.4.) Chamberlin allegedly told Wilcox that he would be sorry if he did. (*Id.*) Wilcox filed the grievance on May 13, 2020, and Chamberlin then issued him an

---

[1]   Wilcox misidentifies the grievance as <u>LMF-2005-0590-27B</u> in his response to Chamberlin's motion for partial summary judgment, but accurately refers to the content of <u>LMF-2006-0646-17B</u> and its Step I response. (ECF No. 25-1, PageID.302.) PC Chamberlin similarly misidentifies the grievance as <u>LMF-2006-0646-27B</u> in his brief. (ECF No. 23, PageID.129.)

allegedly false retaliatory misconduct for disobeying a direct order on May 15, 2020. (*Id.*) The misconduct ticket was dismissed on appeal. (*Id.*)

Wilcox says that, on May 17, 2020, he informed Chamberlin that he intended to write another grievance against Chamberlin for issuing the retaliatory misconduct on May 15, 2020. (*Id.*) Chamberlin allegedly indicated that if Wilcox continued to file grievances, Chamberlin would continue to issue Wilcox misconduct tickets. (*Id.*) On May 18, 2020, Chamberlin issued Wilcox another misconduct ticket, again under the guise of disobeying a direct order. (*Id.*) The misconduct ticket was dismissed after the initial misconduct hearing. (*Id.*)

Finally, on May 19, 2020, Wilcox once again informed Chamberlin of his intent to write a grievance against Chamberlin for issuing retaliatory false misconduct tickets. (*Id.*) Wilcox says that Chamberlin allegedly replied "I have plenty of time and plenty of tickets. See you in Level 5." (*Id.*) The same day, May 19, 2020, Chamberlin issued Wilcox another misconduct ticket for disobeying a direct order. (*Id.*, PageID.5.) Once again, this misconduct ticket was dismissed after the initial misconduct hearing. (*Id.*)

Wilcox asserts that in addition to the ridicule he experienced at the hands of staff and other prisoners due to the pattern of retaliation, he experienced anxiety, panic attacks, migraines, skin inflammation, and gastrointestinal discomfort. (*Id.*) These ailments only ceased when PC Chamberlin transferred to a different housing unit. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

---

[2] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion

procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a grievable issue informally within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the

grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. When the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-

established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Ky. Dept. of Corr.*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,[3] the inmate must raise the issue during the initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) ("This grievance relates to the issuance of major misconduct reports, and Michigan's rules provide that the only avenue for challenging such reports is a hearing . . . .").[4]

---

[3] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.105 ¶ B (eff. date 07/01/18).

[4] The undersigned acknowledges that in an unpublished opinion written the same year as *Siggers*, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under

If the inmate claims to have received a retaliatory Class I misconduct, he must then file submit a Request for Rehearing raising the retaliation issue. *Id.* at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any

---

MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 501 (6th Cir. 2011). Because published decisions bind this Court, and *Reynolds-Bey* is not a published decision, the undersigned need not resolve this conflict. 6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)). *Siggers* controls.

9

> procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## V. Analysis

The undisputed facts pertaining to the exhaustion of Wilcox's claims are as follows. On June 1, 2020, Wilcox filed grievance LMF-2006-0646-17B. His Step I grievance and the MDOC's Step I response are shown below.

---

[5] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

> [Michigan Department of Corrections Prisoner/Parolee Grievance Form, Grievance Identifier LMF-20-06-0646-17B, received 6-1-2020. Grievant: Wilcox #223862, LMF, Lock B225, Date of Incident 5/27/20, Today's Date 6/2/20. Attempt to resolve: "I spoke to Chamberlin" on 5/27/20.
>
> Grievance text: "This grievance is written on PC J. Chamberlin for retaliating against me for using the grievance process in violation of my constitutional rights and PD 03.02.130 (L). On 5/15, 5/18 + 5/19 Chamberlin wrote me bogus misconducts for disobeying a direct order which he knew or should have known had no basis in fact or MDOC policy. These were written for the sole purpose of retaliating against me for grievances I wrote on him (LMF 2005-0541-17I, LMF 2005-0591-27B, and LMF 2005-0590-27B). All 3 misconducts were dismissed on 5/27/20. Bringing this up at my misconduct hearings would not serve to exhaust my administrative remedies as required by federal law prior to filing a §1983 lawsuit. As relief I want compensatory and punitive damages of $50,000."
>
> Response (Grievant Interviewed: Yes): "I interviewed all parties involved with this issue. Prisoner Wilcox is grieving that Prisoner Counselor Chamberlain fabricated three misconducts against him in retaliation for grievances that he filed against PC Chamberlain. Wilcox stated to me that all three of the misconducts were 'thrown out'. I spoke with PC Chamberlain about this issue. He stated that he had no idea that Wilcox had wrote a grievance on him when he wrote the misconducts. The misconducts were written because prisoner Wilcox was attempting to contact the family of another prisoner. PC Chamberlain wrote a misconduct for each time that Wilcox wrote a letter to the other prisoner's family. The misconduct process determined that the charges were not appropriate and the misconducts were dismissed. There is no evidence to support the prisoner's claims. Grievance denied."
>
> Respondent: Martus / Masters, Prison Counselor, 6/5/20. Reviewer: Hubble, 6-5-20.]

(ECF No. 23-3, PageID.161.)

In the grievance, Wilcox asserted that PC Chamberlin issued him retaliatory misconduct tickets on May 15, May 18, and May 19, 2020. (*Id.*) On the same form, the Step I Respondent reported that he had interviewed Chamberlin, who said he was unaware of Wilcox's grievances when he issued the tickets. (*Id.*) The Respondent denied the grievance on the basis that there was no evidence to support Wilcox's

11

claims. (*Id.*) In their Step II and III responses to Wilcox's grievance, the Assistant Deputy Warden and the MDOC Grievance Manager, respectively, affirmed this denial as proper. (*Id.*, PageID.162, 164.) According to Wilcox's Step III Grievance Report, the final response was mailed back to LMF eleven days before Wilcox filed suit. (*Id.*, PageID.150.) The record does not demonstrate, and PC Chamberlin does not allege, that Wilcox filed suit before receiving his Step III denial.

In support of his motion for summary judgment, PC Chamberlin attempted to disregard the denial of LMF-2006-0646-17B on its merits by arguing that, pursuant to *Siggers*, Wilcox had to utilize the misconduct hearing process. (ECF No. 23, PageID.129-130.) Non-grievable issues are either exempt from the exhaustion requirement or, when an alternative remedy exists such as the misconduct hearing process, must be exhausted via the alternative remedy. *Bouchard*, 89 F. App'x at 971; *Siggers*, 652 F.3d at 694. But, here, the MDOC waived that argument and all other arguments concerning procedural defects when it chose to address LMF-2006-0646-17B on its merits. *Reed-Bey*, 603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at \*5 (W.D. Mich. Nov. 26, 2019), *report and recommendation adopted*, No. 2:18-CV-150, 2020 WL 1043862 (W.D. Mich. Mar. 4, 2020) (finding that a prisoner successfully exhausted his misconduct-related retaliation claim via the grievance process where his grievance was denied on the merits). Clearly, LMF officials were notified of Wilcox's claims and provided the time and opportunity to address them when they evaluated LMF-2006-0646-17B on its merits, rendering the claims therein exhausted. *Reed-Bey*, 603 F.3d at 326

("Enforcing internal prison rules even when prison officials do not and even when they proceed to address a grievance on the merits . . . would give their merits-based grievance denials undeserved insulation from federal judicial review."). As such, whether Wilcox raised retaliation in his initial hearings for the misconduct tickets or for the first time on appeal is irrelevant here — this case is factually distinct from those dismissing unexhausted claims pursuant to *Siggers*.[6]

## VI. Recommendation

The undersigned respectfully recommends that this Court deny PC Chamberlin's motion for partial summary judgment (ECF No. 22).

If the Court accepts this recommendation, all three of Wilcox's retaliation claims will remain.

Dated: January 18, 2022　　　　　　　　　/s/ *Maarten Vermaat*
　　　　　　　　　　　　　　　　　　　　MAARTEN VERMAAT
　　　　　　　　　　　　　　　　　　　　U. S. MAGISTRATE JUDGE

---

[6] However, the undersigned thinks it appropriate to note that the arguments in this case demonstrate continued confusion surrounding the proper exhaustion of retaliatory-misconduct claims. Specifically, PC Chamberlin concedes the exhaustion of the May 18 and 19 misconduct tickets through LMF-2006-0646-17B not because the grievance was addressed on its merits, but because Wilcox was found not-guilty of the alleged misconduct after the initial hearing and was therefore unable to assert retaliation in an appeal. (ECF No. 23, PageID.129.) But that is not the law set forth in *Siggers* and its progeny. Regardless of whether a prisoner prevails following an initial misconduct hearing, the prisoner will have the opportunity to raise retaliation during that hearing. The current law says that he must. *See, e.g., McNees v. Torrey*, No. 1:19-CV-121, 2021 WL 1178627 (W.D. Mich. Mar. 4, 2021), *report and recommendation adopted*, No. 1:19-CV-121, 2021 WL 1171958 (W.D. Mich. Mar. 29, 2021) ("[I]n order to exhaust a retaliatory misconduct ticket claim properly, the prisoner must raise that claim at the misconduct hearing and, *if unsuccessful*, in a motion or application for rehearing or in an appeal.").

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).