UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| STEVEN JON WILCOX, #223862, | Case No. 2:20-cv-178 |
| Plaintiff, | Hon. Jane M. Beckering<br>U.S. District Judge |
| v. | |
| KEITH J. CHAMBERLIN, | |
| Defendant. | |
| _____/ | |

## REPORT AND RECOMMENDATION

### I.   Introduction

This Report and Recommendation (R&R) addresses Defendant Prison Counselor (PC) Keith Chamberlin's motion for summary judgment. (ECF No. 39.)

Plaintiff — state prisoner Steven Jon Wilcox — filed suit pursuant to 42 U.S.C. § 1983 on September 21, 2020. (ECF No. 1.) In his verified complaint, Wilcox asserted while he was confined at the Alger Correction Facility (LMF) in Munising, Michigan, Defendant PC Chamberlin retaliated against Wilcox by issuing him misconduct tickets on three separate occasions. (*Id.*, PageID.4-5.) Wilcox sues Chamberlin in his individual and official capacities. (*Id.*, PageID.3.)

PC Chamberlin now moves for summary judgment. (ECF No. 39.) Chamberlin asserts that Wilcox cannot establish that he was engaged in protected conduct with respect to the first alleged instance of retaliation. (ECF No. 40, PageID.355-359.) Chamberlin further asserts that he issued the second and third misconduct tickets

because he believed Wilcox to be in violation of a direct order; retaliatory motive was not the but-for cause of the misconduct tickets. (*Id.*, PageID.359-363.) Finally, Chamberlin says that he is entitled to sovereign immunity in his official capacity and qualified immunity in his individual capacity. (*Id.*, PageID.363-365.)

In response, Wilcox says that he was engaged in protected conduct when PC Chamberlin retaliated against him the first time. (ECF No. 42, PageID.481.) Specifically, Wilcox says that he was complaining about Chamberlin's demand that Wilcox fill out two disbursement forms for his mail instead of one, contrary to MDOC policy. (*Id.*) Wilcox further claims that every time he told Chamberlin he would be filing a grievance, Chamberlin responded with threats, including by stating: "I will just keep writing you tickets [misconduct reports] until they send you to level 5 [maximum security]." (*Id.*, PageID.480 (alteration in original).)

The undersigned respectfully recommends that the Court grant in part and deny in part PC Chamberlin's motion for summary judgment. The undersigned recommends that the Court grant Chamberlin summary judgment in his official capacity because Chamberlin is entitled to sovereign immunity. The undersigned further recommends that the Court grant Chamberlin summary judgment as to Wilcox's first retaliation claim because Wilcox's initial grievance was frivolous. But the undersigned recommends that the Court deny Chamberlin's motion for summary judgment as to Wilcox's second and third retaliation claims because Chamberlin does not contest that Wilcox was engaged in protected conduct, and there are genuine

issues of material fact concerning whether retaliatory motive was the but-for cause of Chamberlin's adverse actions.

## II. Factual Allegations

Wilcox's complaint is short and concise, with little in the way of context. He says that on May 12, 2020, he informed Chamberlin that he would be writing a grievance concerning Chamberlin's mishandling of his mail on May 8, 2020. (ECF No. 1, PageID.4.) Chamberlin allegedly responded by stating: "You will be sorry if you do." (*Id.*) After Wilcox filed the grievance on May 13, 2020, Chamberlin issued him an allegedly false, retaliatory misconduct for disobeying a direct order on May 15, 2020. (*Id.*) The misconduct was dismissed on appeal. (*Id.*)

On May 17, 2020, Wilcox informed Chamberlin that he intended to write another grievance against Chamberlin for issuing the retaliatory misconduct on May 15, 2020. (*Id.*) Chamberlin responded by stating, "I will just keep writing you tickets [misconduct reports] until they send you to level 5 [maximum security]." (*Id.* (alteration in original).)

On May 18, 2020, Chamberlin issued Wilcox another misconduct ticket, again under the guise of disobeying a direct order. (*Id.*) The misconduct ticket was dismissed after the initial misconduct hearing. (*Id.*)

Finally, on May 19, 2020, Wilcox again informed Chamberlin of his intent to write a grievance against Chamberlin for issuing retaliatory false misconduct tickets. (*Id.*) Wilcox says that Chamberlin replied, "I have plenty of time and plenty of tickets. See you in Level 5." (*Id.*)

The same day, Chamberlin issued Wilcox another misconduct ticket for disobeying a direct order. (*Id.*, PageID.5.) Once again, this misconduct ticket was dismissed after the initial misconduct hearing. (*Id.*)

Wilcox asserts that in addition to the ridicule he experienced at the hands of staff and other prisoners due to the pattern of retaliation, he experienced anxiety, panic attacks, migraines, skin inflammation, and gastrointestinal discomfort. (*Id.*)

PC Chamberlin's affidavit provides significantly more context to Wilcox's retaliation claims. Chamberlin says that in May of 2020, Wilcox gave Chamberlin one item of legal mail and two items of personal mail to send out on Wilcox's behalf. (ECF No. 40-3, PageID.381.) Chamberlin sent the mail to the mailroom, and the mailroom processed the legal mail but sent the personal mail to the inspector for further review. (*Id.*)

On May 13, 2020, the inspector issued a Notice of Intent to destroy the letters after determining that the intended recipients — Bonnie Kay and Megan Orlando — were another prisoner's mother and girlfriend, and finding that the mail "posed a risk to the safety and security of the facility and to Wilcox's rehabilitation as a prisoner." (*Id.*) Chamberlin says that at the time, he believed that the Notice of Intent included language prohibiting Wilcox from sending mail to Bonnie Kay or Megan Orlando; it did not. (*Id.*, PageID.381, 383.)

Chamberlin says that on May 15, 2020, he collected more mail from Wilcox, and noticed that it was addressed to Orlando. (*Id.*, PageID.381.) Because he believed that the May 13 Notice of Intent prohibited Wilcox from sending Orlando mail, PC

4

Chamberlin issued Wilcox a misconduct ticket for disobeying a direct order. (*Id.*, PageID.382.) This pattern repeated on May 18, 2020 and May 19, 2020. (*Id.*)

PC Chamberlin says that he did not issue misconduct tickets against Wilcox in retaliation for Wilcox's grievances, nor did he tell Wilcox that he would. In fact, Chamberlin says that he could not have made the May 17 threat as he does not work on Sundays; May 17, 2020 was a Sunday. (*Id.*)

### III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.   Analysis

Wilcox sets forth three, interrelated retaliation claims: the first involving Wilcox's May 13 grievance and the May 15 misconduct ticket that Chamberlin issued;

the second involving Wilcox's May 17 grievance and the May 18 misconduct ticket that Chamberlin issued; and the third involving Wilcox's May 19 grievance and the May 19 misconduct ticket that Chamberlin issued.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.*

PC Chamberlin argues that Wilcox's claims should be dismissed for two reasons. First, Wilcox's May 13 grievance did not constitute protected conduct because it was frivolous. (ECF No. 40, PageID.356.) Second, Wilcox's grievances were not the but-for cause of PC Chamberlin's decision to issue the misconduct tickets; PC Chamberlin issued the misconduct tickets based on his belief, albeit mistaken, that Wilcox was disobeying a direct order. (*Id.*, PageID. 360.)

The undersigned first turns to PC Chamberlin's assertion that Wilcox's May 13 grievance did not constitute protected conduct because it was frivolous. Wilcox's May 13 grievance is shown below.

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I: 5/14/2020    Grievance Identifier: LMF 2005 0541 11 17D

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| WILCOX | 223862 | LMF | B225 | 5/8/20 | 5/13/20 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 5/12/20
If none, explain why. I SENT A KITE TO PC CHAMBERLAIN

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

THIS GRIEVANCE IS WRITTEN ON PC CHAMBERLAIN. ON 5/7 I GAVE CHAMBERLAIN 3 PIECES OF MAIL TO GO OUT VIA DISBURSEMENT, US DISTRICT COURT & M. ORLANDO & B. KAY. ON 5/8 HE BROUGHT THEM BACK AND SAID THEY HAD TO GO ON SEPERATE DISBURSEMENTS. WHILE THE MAIL TO THE COURT WENT OUT, THE MAIL TO B. KAY & M. ORLANDO HAS NOT. CHAMBERLAIN USED THE "SEPERATE DISBURSEMENT" AS A PLOY TO SEPERATE THE LETTERS SO HE COULD MISAPPROPRIATE THE LETTERS TO B. KAY & M. ORLANDO IN VIOLATION OF PD 05.03.118.

**RESPONSE** (Grievant Interviewed? ☑ Yes ☐ No  If No, give explanation. If resolved, explain resolution.)
Prisoner Wilcox was interviewed and concerns were addressed. Prisoner Wilcox is an indigent prisoner; therefore his mail gets sent out via disbursement through the Prison Counselor. Counselor Chamberlin was contacted and indicated that the legal mail was put on a separate disbursement because the mail is sealed and must be sent out in a timely manner. The other two letters in question were unsealed and were under review by Inspector Contreras due to the content of the letters. An NOI was generated for the two letters (to B. Kay and M. Orlando) because prisoner Wilcox was attempting to send them to the family of another prisoner. In the NOI it was determined that the content of the letters was a threat to the safety and security of the facility and the other prisoner. Prisoner Wilcox admitted guilt and agreed to have the letters destroyed. No violations in policy or procedure. Grievance denied.

Respondent's Signature: [signature]    Date: 5/18/2020    Reviewer's Signature: Hubble    Date: 5-18-2020
Respondent's Name (Print): HOOVER    Working Title: PC    Reviewer's Name (Print): Hubble    Working Title: RUM

(ECF No. 1-1, PageID.12.)

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his

own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "If the grievances are frivolous, however, this right is not protected." *Id.* Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith v. Campbell*, 250 F.3d 1032, 1037 (citing *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir.1995)). "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous. As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is de minimis." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases); *see also Roden v. Plont*, No. 2:17-CV-00188, 2019 WL 5275035, at *4 (W.D. Mich. Aug. 14, 2019) (finding that the plaintiff's complaint that food services refused to sanitize the entire lunch line after he found a worm or maggot in his banana was de minimis), *R&R adopted*, No. 2:17-CV-188, 2019 WL 4593514 (W.D. Mich. Sept. 23, 2019); *Good v. Spencer*, No. 2:21-CV-1, 2022 WL 9813754, at *4-5 (W.D. Mich. July 19, 2022) (finding that the plaintiff's complaints that an officer closed the dayroom eight minutes early, used profanity, and reviewed his prisoner

file were de minimis), *R&R adopted*, No. 2:21-CV-1, 2022 WL 4354269 (W.D. Mich. Sept. 20, 2022). This Court has also found grievances involving "verifiably untrue" allegations to be frivolous. *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *R&R adopted*, No. 1:19-cv-116, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020).

PC Chamberlin argues that Wilcox's May 13 grievance was frivolous because it "essentially complain[ed] about the consequences of [Wilcox's] violation of MDOC policy and administrative rules." (ECF No. 40, PageID.358.) Wilcox disagrees; his grievance centered around PC Chamberlin's requirement that he complete separate disbursement forms. (ECF No. 42, PageID.481.)

On its face, Wilcox's grievance does not complain about prison staff's response to Wilcox's violation of policy, but rather PC Chamberlin's conduct prior to the discovery that Wilcox had violated policy. Nevertheless, in the opinion of the undersigned, the grievance was de minimis. Whether or not MDOC policy required Wilcox to execute separate disbursement forms for his outgoing mail on May 8, 2020, Wilcox has not demonstrated that PC Chamberlin's demand for separate forms had an adverse impact on him.[1] *See Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354,

---

[1] Wilcox asserts for the first time in an unauthorized sur-reply that Chamberlin's demand for multiple disbursements constituted harassment. (ECF No. 46, PageID.515.) This late-stage, factually unsupported allegation is insufficient to alter the undersigned's analysis.

9

at *2–3 (6th Cir. May 22, 2000) (finding that a grievance complaining about a prison employee eating at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]").  As such, the undersigned finds that PC Chamberlin has shown that Wilcox was not engaged in protected conduct when he filed the May 13 grievance because the grievance was de minimis.  As a result, the undersigned recommends that the Court grant PC Chamberlin summary judgment as to Wilcox's first retaliation claim.

Turning then to Wilcox's second and third retaliation claims, PC Chamberlin does not deny that Wilcox was engaged in protected conduct when he filed his May 17 and May 19 grievances.[2]  Instead, PC Chamberlin says that Wilcox's remaining retaliation claims should be dismissed because retaliatory motive was not the but-for cause of PC Chamberlin's decision to issue the May 18 and May 19 misconduct reports.  (ECF No. 40, PageID. 360.)

To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). At the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

---

[2]    Perhaps because Chamberlin concedes that he issued the misconduct tickets based on a mistaken belief.  *Cf. Colvin v. Washington*, No. 2:18-CV-150, 2022 WL 4088065 (W.D. Mich. July 27, 2022) (finding that a prisoner plaintiff could not "creat[e] retaliation claims out of thin air" by filing a frivolous grievance, and then filing follow-up grievances asserting retaliation based on the frivolous grievance), *R&R adopted*, No. 2:18-CV-150, 2022 WL 4079876 (W.D. Mich. Sept. 6, 2022).

10

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399; *see also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

As set forth above, Wilcox says that PC Chamberlin repeatedly responded to Wilcox's threats to file grievances by threatening to issue misconduct tickets. (ECF No. 1, PageID.4.) Chamberlin acknowledges Wilcox's allegations but denies that he made the statements or harbored any retaliatory motive. (ECF No. 40, PageID.359.) Chamberlin says that documentary evidence establishes that he issued the May 18 and May 19 misconduct tickets based on his belief that Wilcox was disobeying a direct order in the May 13 Notice of Intent. (*Id.*, PageID.360.) Specifically, Chamberlin points to his affidavit, in which he expresses his belief that Wilcox was disobeying the Notice of Intent, and the misconduct tickets, in which he expressed the same. (*Id.*, PageID.360-361 (citing ECF No. 40-2, PageID.380-383 (Chamberlin's Affidavit); ECF No. 1-1, PageID.15, 24, 32 (Misconduct Tickets)).) Chamberlin also claims that he wrote the misconduct tickets because he believed that Wilcox's letters posed a threat to safety and security and interfered with Wilcox's rehabilitation as a prisoner. (*Id.*, PageID.362.)

In the opinion of the undersigned, Chamberlin's statements in his affidavit and in the misconduct reports do not establish that his mistaken belief was the but-for cause his adverse actions against Wilcox. *Cf. Webb v. Golladay*, No. 2:19-CV-110, 2022 WL 4369931, at *4 (W.D. Mich. May 12, 2022) (finding that a work evaluation

and affidavit in which the defendant stated that he terminated the plaintiff for failing to carry out his job duties created a genuine issue as to whether the retaliatory motive was the but-for cause of the termination), *R&R adopted*, No. 2:19-CV-110, 2022 WL 4365860 (W.D. Mich. Sept. 21, 2022).  Instead, Chamberlin's evidence together with Wilcox's verified allegations create genuine issues of material fact as to the causation elements of Wilcox's second and third retaliation claims.

On the record before the Court, a reasonable juror might determine that Chamberlin would have issued the misconduct tickets regardless of the grievances, but a reasonable juror might instead determine that the mistaken belief was pretext for Chamberlin's true motivation: retaliation.  Thus, the undersigned concludes that Chamberlin has not shown that no genuine issue of material fact exists with respect to the causation element of Wilcox's second and third retaliation claims.  Accordingly, the undersigned recommends that the Court deny PC Chamberlin summary judgment as to Wilcox's second and third retaliation claims.

## V.     Qualified Immunity

In addition to arguing that he is entitled to summary judgment on the merits of Wilcox's claims, PC Chamberlin asserts that he is entitled to qualified immunity in his individual capacity.  (ECF No. 40, PageID.363.)

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d

531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second prong. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or

13

constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, supra, at 741–742, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. Id., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, supra, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." Anderson, supra, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" Mullenix, supra, at 309 (quoting Anderson, supra, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

14

Retaliating against prisoners for filing non-frivolous grievances violates their clearly established First Amendment rights. *Hill*, 630 F.3d at 472 (emphasis added) (citing *Herron*, 203 F.3d at 415). Because Chamberlin does not contend that Wilcox's May 17 or May 19 grievances were frivolous, and because there are genuine issues of material fact concerning whether Chamberlin would have issued the May 18 and May 19 misconduct tickets regardless of Wilcox's grievances, PC Chamberlin is not entitled to qualified immunity at this stage of the case.

## VI. Sovereign Immunity

PC Chamberlin finally asserts that he is entitled to sovereign immunity as to the claims against him in his official capacity. (ECF No. 40, PageID.364-365.)

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). As such, Wilcox's claims against PC Chamberlin in his official capacity are properly dismissed in accordance with Eleventh Amendment.

## VII. Recommendation

The undersigned respectfully recommends that the Court grant in part and deny in part PC Chamberlin's motion for summary judgment. The undersigned recommends that the Court grant Chamberlin summary judgment as to all of Wilcox's claims against Chamberlin in his official capacity. The undersigned further recommends that the Court grant Chamberlin summary judgment as to Wilcox's first retaliation claim because Wilcox's initial grievance was frivolous. But the undersigned recommends that the Court deny Chamberlin's motion for summary judgment as to Wilcox's second and third retaliation claims because Chamberlin does not contest that Wilcox was engaged in protected conduct, and there are genuine issues of material fact concerning whether retaliatory motive was the but-for cause of Chamberlin's adverse actions.

If the Court accepts this recommendation, Wilcox's second and third retaliation claims against PC Chamberlin in his personal capacity, involving Wilcox's May 17 and May 19 grievances and the related misconduct tickets, will remain.

Dated:  November 15, 2022                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).